UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-14-GWU

DEBORAH L. CLEM, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

>
> Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Deborah L. Clem, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical degenerative joint disease and degenerative disc disease, fibromyalgia, hypertension, reflux, ulcers, a hiatal hernia, and an anxiety disorder. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Clem retained the residual functional capacity to perform her past relevant work as a medical laboratory technician, and therefore was not entitled to benefits. (Tr. 19-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions, one of which reflected his ultimate conclusions that the plaintiff could perform medium level exertion and also had the following non-exertional restrictions. She: (1) could not crawl or climb ladders, ropes, or scaffolds; and (2) could occasionally bend, stoop, crouch, and climb ramps or stairs. (Tr. 779). The VE responded that such a person could perform Mrs. Clem's past relevant work as a medical laboratory technician, even if she were restricted to light level exertion. (Tr. 779-80).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Clem alleged disability beginning in 2003 (Tr. 768), but the ALJ noted that a previous administrative denial had occurred on October 21, 2005 (Tr. 36-42),

and declined to reopen the decision. Therefore, the plaintiff amended her onset date to October 22, 2005. (Tr. 766).

Mrs. Clem testified that she had stopped working in 2003 after an injury at the hospital where she worked. (Tr. 768). She described her problems as degenerative arthritis in her spine at all levels, and noted that she had been diagnosed with thoracic outlet syndrome as well as fibromyalgia, which had been diagnosed in 1993 or 1994, well before she had stopped working. (Tr. 771-2). She had daily headaches, trouble looking up and down and side to side, numbness in her feet, legs, and hands and needed to keep changing positions frequently during the day. (Tr. 775-7). The medication she was taking had side effects including dry mouth, not being able to think clearly, and drowsiness. (Tr. 773, 777). The pain made her both grumpy and depressed, causing several crying spells per week, and her treating psychiatrist had placed her on medication to help her sleep. (Tr. 775-6).

The plaintiff raises two issues regarding her physical restrictions on appeal.[1]

The plaintiff's first argument is that the ALJ failed to give controlling weight to the opinions of her treating family physician, Dr. John Litton. Dr. Litton provided a residual functional capacity assessment on three occasions. On August 23, 2005, slightly before the prior administrative decision, Dr. Litton opined that the plaintiff could lift only 10 pounds occasionally and 5 pounds frequently because of chronic

---

[1] The plaintiff does not raise any issue regarding mental impairments.

pain and upper extremity numbness.  Standing and walking was limited to two hours in an eight-hour day (no more than 30 minutes without interruption), as was sitting. Mrs. Clem could "never" climb, stoop, kneel, balance, crouch, or crawl, had restrictions on reaching, pushing, pulling and working around moving machinery, temperature extremes, noise, humidity, and vibration.  (Tr. 169-70).

On June 25, 2007, Dr. Litton found the same lifting limitations, but indicated that Mrs. Clem could stand or walk four hours in an eight-hour day (no more than 30 minutes without interruption), sit eight hours per day (no more than 30 minutes without interruption), never climb, stoop, crouch, or crawl, and could occasionally kneel and balance.  She also had restrictions on pushing and pulling, and in working at heights, around moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration.  (Tr. 171-2).

Finally, on February 29, 2008, Dr. Litton reported that Mrs. Clem could lift 20 pounds rarely, 10 pounds occasionally, and less than 10 pounds frequently.  He appeared to indicate that she could both sit and stand 15 minutes and more than 2 hours.[2]  He went on to state that the plaintiff could "rarely" hold her head in a static position, could occasionally look down, turn her head to the right and left, and look up, could never climb ladders or stairs, could "rarely" crouch and squat, could

---

[2]The plaintiff concedes in her brief that the physician's opinion is not clear on this point.  <u>Brief in Support of Plaintiff's Motion for Summary Judgment</u>, Docket Entry No. 8, p. 8.

occasionally twist and stoop, and could reach overhead and use her hands for grasping about 50 percent of the time. He stated that she was not a malingerer, that her impairments were reasonably consistent with her symptoms and functional limitations, and he would expect her to be absent more than four days per month. (Tr. 145-8).

The ALJ declined to accept Dr. Litton's "numerous" opinions, citing several reasons. He stated that they were inconsistent with the physician's "rather benign" treatment notes, which did not contain longitudinally significant clinical findings to support the severity of the restrictions. (Tr. 20). He noted that the June, 2007 opinion reflected a significant improvement in the plaintiff's ability to sit, stand, and walk compared to the August, 2005 opinion but eight months later the functional limitations were far more severe even though the same document stated that the plaintiff had a "good" response to treatment and the office notes in the interim were "essentially bereft of any significant clinical findings." (Tr. 20-1). Finally, he drew a negative inference from the plaintiff's testimony that she had been with Dr. Litton when one of the forms was filled out and admitted that he had asked her how long she could sit and stand. (Tr. 773-4).

The ALJ stated that he found the plaintiff's condition had deteriorated somewhat since the prior administrative decision, which had limited the plaintiff to "medium" level work with occasional climbing, stooping, and crawling. (Tr. 19, 42).

As such, his restrictions were slightly more limiting than found by state agency reviewing sources who had reviewed a portion of the record. (Tr. 412-18, 462-8).[3]

The only other medical source to offer an opinion was Dr. Kevin J. Croce, who conducted a consultative physical evaluation on April 22, 2006. He found that the plaintiff's back had no scoliosis or spasm, although there was some tenderness of the lower lumbar spine. (Tr. 471). Mrs. Clem was able to perform gait and station testing, walk heel to toe and perform a tandem walk without difficulty but had great difficulty with a knee squat and needed help standing back up. She had normal reflexes but decreased range of motion of the neck and left shoulder. (Id.). Dr. Croce concluded that it appeared the plaintiff had the ability to perform activities involving sitting, standing, moving about, lifting and carrying light objects, handling objects, hearing, seeing, speaking, and traveling. (Id.). She might have difficulty with acts involving repetitive or constant knee squatting, crawling, and carrying heavy objects, or activities that would involve or require constant neck flexion or rotation throughout the course of the day. (Tr. 472). Lifting heavy objects with the left hand might pose some difficulty but she had normal gross manipulation and grip, and lifting light objects on a consistent basis throughout the work day should, he felt, be no problem. (Id.).

---

[3]One of the state agency employees was identified only as Sheena R. Meade, with no indication of any medical qualifications. (Tr. 468). The other reviewer was Timothy Gregg, M.D. (Tr. 418).

The plaintiff asserts that the ALJ erroneously concluded that Dr. Litton's opinions were not entitled to controlling weight, and, in the alternative, that it was error for the ALJ not to even mention Dr. Croce's proposed restrictions and specifically to fail to give a rationale for declining to include his restriction on activities involving constant neck flexion or rotation throughout the day, which was not mentioned by the non-examining reviewers.

The Commissioner's regulations require that the opinions of a treating physician are entitled to controlling weight if they are well supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The court concludes that the ALJ gave "good reasons" for declining to accept the opinion of the treating source. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). The physician's office notes do reflect pain and tenderness on palpation and that the range of motion was decreased to an unspecified degree but they do not note any deficiencies in sensation, reflexes, or strength and on occasion refer to the lower back pain as intermittent and having been present more than 15 years, and also refer to part of her back pain as being the result of poor conditioning. (E.g., Tr. 365, 376, 378). As the ALJ noted, it is difficult to explain the variations between the opinions offered by Dr. Litton based on any objective findings in his office notes. This also detracts from their credibility. In addition, there is at least a suggestion in the plaintiff's testimony that she may

have supplied the physician's answers to some of the questions on at least one of the forms.  Taken as a whole, substantial evidence supports the ALJ's conclusion that Dr. Litton's opinions were not entitled to controlling weight.

Regarding Dr. Croce, while it is true that the ALJ did not specifically discuss his restrictions, there is no indication that these would have prevented the claimant from performing her past relevant work as a medical laboratory technician. Specifically, neither the plaintiff's work history report (Tr. 118-19) or the <u>Dictionary of Occupational Titles</u> at 078.381-014 indicate that the job would involve constant neck flexion or rotation throughout the course of the day.  It was the plaintiff's burden at Step Four of the sequential evaluation to show that she could not return to her past relevant work, and she failed to do so.  Consequently, substantial evidence supports the ALJ's decision.

The decision will be affirmed.

This the 22nd day of September, 2010.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**